UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| TLC VISION (USA) CORPORATION, | ) | |
| & TLC HOLDINGS, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:12CV01855 ERW |
| | ) | |
| JARED CHRISTOPHER FREEMAN, | ) | |
| DAWN HOLSTED, MARY JO'EL | ) | |
| STURM, STEPHANIE GOINS, & | ) | |
| NJOY VISION!, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on Plaintiffs TLC Vision (USA) Corporation's and TLC Holdings, Inc.'s (collectively referred to as "TLC") Motion for Temporary Restraining Order and Order for Hearing on Preliminary Injunction [ECF No. 3] and Plaintiffs' Motion for Expedited Discovery [ECF No. 5].

**I. BACKGROUND**

Plaintiffs have filed a Complaint against Defendants Jared Christopher Freeman, Dawn Holsted, Mary Jo'el Sturm, Stephanie Soles, Stephanie Goins, and NJoy Vision!, LLC ("NJoy Vision"), asserting claims for Breach of Contract, Tortious Interference with Contractual and/or Business Relationships, and Civil Conspiracy [ECF No. 1]. Plaintiff TLC Vision (USA) Corporation is a Delaware corporation, with its principal place of business in Chesterfield, Missouri. In their Complaint, Plaintiffs seek an Order temporarily, preliminarily, and permanently enjoining Defendants from certain activities, which Plaintiffs allege violate employment agreements executed by the parties. They also request this Court to order the return

of records and documents obtained by Defendants during their employment with Plaintiffs, to order Defendants to take reasonable steps to preserve potentially relevant information stored on any computer-based system, to award damages, and to grant such other and further relief as deemed just and proper, including but not limited to, an equitable accounting for all profits earned by Defendants in violation of their employment agreements.

According to Plaintiffs, TLC is engaged in the highly competitive business of providing access to refractive lasers and related services needed by optometrists and opthalmologists to provide vision correction services to patients. Plaintiffs state that TLC provides turnkey surgical centers for ophthalmic surgeons, and that TLC has developed the nation's largest network of ophthalmologist and optometrists, referred to as "affiliate doctors," many of whom refer patients for surgery at TLC centers.

In their Motion for Temporary Restraining Order, Plaintiffs allege that Defendants are two former TLC vice presidents, one former TLC director, two former TLC managers, and NJoy Vision, a company formed by the individual defendants, which operates refractive eye surgery centers in competition with TLC in Oklahoma City and Tulsa markets. Plaintiffs state that Defendants signed employment agreements as a condition of their employment with TLC, because Defendants would have access to confidential TLC information, which would supply them with highly specialized and valuable information about TLC's business and customers. Plaintiffs allege that, while differing slightly, the employment agreements preclude, for a one-year period following termination of their TLC employment relationship, all defendants but Holsted from (a) competing in the Tulsa and Oklahoma City markets, (b) soliciting TLC affiliate doctors and surgeons, at a minimum, in the Tulsa and Oklahoma City markets, (c) soliciting TLC employees, and (d) using or disclosing TLC's confidential information. Plaintiffs aver that

2

Defendant Holsted's agreement contains the same limitations, but her restrictions were to be effective for a period of six months, rather than one year post-TLC employment.

Plaintiffs contend that Defendants violated their employment confidentiality and non-competition agreements by working for a TLC competitor, recruiting TLC employees, soliciting TLC customers, and stealing TLC's confidential information. They ask this Court to enjoin Defendants from 1) competing in the Oklahoma City and Tulsa markets; 2) soliciting specific customers with whom Defendants had contact during their TLC employment, or about whom they had access to confidential information; 3) soliciting TLC employees and consultants; 4) interfering with TLC's contractual and business relationships with its surgeons; and 5) using or disclosing TLC's confidential information.

Plaintiffs allege that, unless the requested Temporary Restraining Order is entered, they suffer, and will continue to suffer, irreparable harm in the form of loss of their established customer base and disclosure of the confidential and trade secret information. Plaintiffs assert that, if their requested relief is denied, the harm to them outweighs the potential harm to Defendants if the Motion is granted. They further state that there exists a substantial likelihood that they will prevail on the merits in this case, and that the public interest will best be served by entry of the requested Temporary Restraining Order.

In their Motion for Expedited Discovery, Plaintiffs assert that they need to conduct expedited discovery in advance of the required Federal Rule of Civil Procedure 26(f) planning conference, so that they can prepare for the Preliminary Injunction hearing [ECF No. 5]. They ask this Court to enter an Order allowing the parties to immediately notice depositions and serve written interrogatories and document production requests, with the provision that such depositions, interrogatories and requests be completed or answered within five (5) business days

3

of service of notice. Plaintiffs further request that the Court order that these requests and notices may be served via facsimile or e-mail, with service effective on the day of transmission. Additionally, Plaintiffs move this Court to order that all parties may immediately serve subpoenas on relevant non-parties, and require production of any requested documents within ten (10) business days of service.

A hearing on Plaintiffs' motions was held in this Court on October 22, 2012. For the reasons that follow, the Court will grant Plaintiffs' request for temporary restraining and to expedite discovery.

## II. INJUNCTIVE RELIEF STANDARD

In determining whether preliminary injunctive relief is warranted, the Court is guided by *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109 (8th Cir. 1981) (superseded by statute on other grounds). Injunctive relief is only appropriate where the party seeking the relief has no adequate remedy at law. The relevant factors to be considered by a district court are: "(1)the probability of success on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between this harm and the injury that granting the injunction will inflict on the other interested parties; and (4) whether the issuance of an injunction is in the public interest." *Entergy, Ark., Inc. v. Nebraska*, 210 F.3d 887, 898 (8th Cir. 2000) (citing *Dataphase*, 640 F.2d at 114). No single factor is determinative. *Dataphase*, 640 F.2d at 113. "At base, the question is whether the balance of the equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Id*. The burden of establishing that preliminary relief is warranted is on the party seeking the injunction. *Id*.

### A. Choice of Law Provisions

In consideration of employment, or continued employment, with TLC, Defendants executed certain Confidentiality, Non-Solicitation and Assignment agreements, and certain Non-Competition agreements [ECF No. 3-2 at 16-23, 42-45, 48-52, 57-60, 62-65]. The agreements signed by Defendants Freeman, Sturm, Goins, and Soles provided that they would be governed by Missouri law, and stated that the parties submitted to the jurisdiction and venue in the County of St. Louis, and, in the event federal jurisdiction existed, the District Court for the Eastern District of Missouri, for resolution of any disputes arising out of the agreements [ECF No. 3-2 at 45, 52, 60, 65]. Defendant Holsted's agreements stated that they would be governed by Minnesota law[1] [ECF No. 3-2 at 18, 22].

In their Joint Response [ECF No. 12], Defendants assert that Oklahoma, rather than Missouri, law must be applied to the non-compete and non-solicitation provisions of their employment agreements, and they argue that Plaintiffs cannot succeed on the merits of their claims because the agreements' restrictive covenants violate Oklahoma public policy.[2] Defendants claim that, with the exception of Holsted, who is unemployed, all individual defendants currently live in work in Oklahoma, and NJoy Vision is registered to do business in

---

[1] In Minnesota, "noncompete agreements are enforceable if they serve a legitimate employer interest and are not broader than necessary to protect this interest." *Kallok v. Medtronic, Inc.*, 573 N.W.2d 356, 361 (Minn. 1998). In determining whether to enforce a particular noncompete agreement or provision, Minnesota courts balance "the employer's interest in protection from unfair competition against the employee's right to earn a livelihood." *Id.* An agreement is valid and enforceable if the employer's interest predominates. *Id.*

[2] During the hearing on Plaintiffs' Motion, counsel for Defendants informed this Court that they filed suit on Friday, October 19, 2012, in Oklahoma state court, asking for a temporary restraining order and preliminary injunction declaring that their employment agreements with TLC are unenforceable under Oklahoma law. Defendants also announced their intention to file with this Court a motion to dismiss, or to transfer on the basis of forum non-nonconvenience.

Oklahoma, with no contact with Missouri. They further claim that, although Defendants Freeman's and Sturm's non-compete and non-solicitation agreements elect Missouri law, these two defendants' have separate superceding agreements that state their employment relationships with Plaintiffs are governed by Oklahoma law. Defendants say that Oklahoma would be the "default state," and that Oklahoma has a materially greater interest in the outcome of this dispute.

TLC has pleaded facts supporting the connection of the employment contracts to Missouri. Plaintiffs' principal place of business is in Chesterfield, Missouri [ECF No. 1]. The non-solicitation and non-compete agreements executed by Defendants Freeman, Sturm, Soles, and Goins specifically state that they "shall be governed by and construed in accordance with the laws of the State of Missouri without regard to conflicts of law principles[,]" and that these employees "submit to the jurisdiction and venue in . . . the Federal District Court for the Easter District of Missouri in St. Louis for resolution of any disputes arising out of or connected with [the agreements]" [ECF No. 3-2 at 45, 52, 60, 65].

It is undisputed that Holsted's restrictive covenant agreements stated that they would be governed by Minnesota law [ECF Nos. 1-3, 3-2 at 16-23]. It is further undisputed that Defendants Soles and Goins executed non-compete and non-solicitation agreements specifically providing that their agreements would be governed by and construed in accordance with Missouri law "without regard to conflicts of law principles" [ECF Nos. 1-13, 1-15, 3-2 at 57-60, 3-2 at 62-65]. Although Defendants Freeman and Sturm argue that separate documents executed by the parties superceded and modified the Missouri choice of law provision contained in their non-solicitation and non-compete agreements, this Court disagrees.

As to Defendant Freeman, the record shows that he and TLC executed a June 1, 2009 "Confidentiality, Non-Competition and Equipment Agreement" [ECF Nos. 1-8, 3-2 at 42-45]

6

that not only specifically stated that it would be governed by and construed in accordance with Missouri law, but also stated that its terms could be "amended, modified, superseded, canceled, renewed, or extended and the terms or covenants hereof may be waived, only be (sic) written instruments signed by all the parties hereto, or in case of waiver by the party waiving compliance."  This agreement shows that Defendant Freeman executed it on April 12, 2009.  In support of their argument that the agreement should be governed by Oklahoma law, Defendants submitted additional employment-related documents, also executed by Freeman on April 12, 2009: 1) a March 17, 2009 letter from TLC's regional director[3] to Freeman; and 2) an "Office Space Lease and Administrative Services Agreement" [ECF Nos. 12-3, 14-1].  The March 17, 2009 letter states, "This letter and your employment will be governed by the laws of Oklahoma" [ECF No. 12-3 at 6].  The lease agreement also states that it would be governed by Oklahoma law [ECF No. 14-1 at 3].  Clearly, an agreement pertaining to the lease of office space and the provision of administrative services would not operate to modify the terms of any non-compete or non-solicitation agreement between an employer and employee.  Further, this Court finds that TLC's March 17, 2009 letter, outlining changes in the structure of Defendant Freeman's employment agreement, does not operate to modify the June 1, 2009 non-compete agreement.  Not only was the letter apparently drafted and conveyed to Defendant Freeman in March 2009, but the letter also expressly states that Defendant Freeman would be required to sign a standard non-compete agreement, which he executed contemporaneously with the March letter.  Consequently, the parties' choice of Missouri law provision governs the terms of their "Confidentiality, Non-Competition and Equipment Agreement."

---

[3]The Court notes that this correspondence is not signed by the TLC director, or by anyone purporting to act on the director's or TLC's behalf.

Defendant Sturm's October 1, 2002 "Confidentiality, Non-Competition and Equipment Agreement [ECF Nos. 1-10, 3-2 at 48-52] also expressly provided that Missouri law would be applicable to it, but stated that its terms or covenants could only be modified by "written instruments signed by Employee and the Company's General Counsel." Defendants submitted two subsequently executed documents, a July 1, 2010 letter from TLC's human resources manager to Defendant Sturm [ECF No. 12-2], and a July 8, 2010 letter from TLC's human resources manager, addressed to Defendant Sturm [ECF No. 14-2]. These two communications indicated that Defendant Sturm would begin new duties with TLC on July 6, and both documents were executed by Defendant Sturm on July 12, 2010. Like Defendant Freeman's March 2009 letter, the July 1, 2010 letter to Sturm stated that the letter and her employment would be governed by Oklahoma law, and indicated that she would be required to sign a standard non-compete agreement.[4] The July 8, 2010 letter to Sturm stated that it was confirming her additional duties and compensation, and declared, "Please understand that neither this letter nor our offer of employment to you is intended to constitute an employment agreement or contract of any kind" [ECF No. 14-2]. This Court finds that, even if the July 1 letter could be construed to constitute a modification of the non-compete's choice-of-law provision,[5] the July 8 letter referencing the

---

[4]Although the letter indicated that Defendant Sturm would be required to execute such an agreement, it is undisputed that she did not. During the hearing, Plaintiffs' counsel explained that this was because Defendant Sturm was not a new hire, but, rather, an established long-term employee accepting a new role and who already had a non-compete agreement with TLC. As to the language indicating that the letter and Defendant Sturm's employment being governed by the laws of Oklahoma, Plaintiffs' counsel stated that this reference concerned matters arising during Defendant Sturm's employment, such as worker's compensation issues.

[5]As argued by Plaintiffs during the hearing, it is questionable, given the non-compete's requirement that any modification could be effected only by written instrument signed by both Defendant Sturm and general counsel for TLC, whether the July 1 offer letter from the human

8

earlier offer letter clarifies that neither document was intended to constitute "an employment agreement or contract of any kind." This subsequent disclaimer, sent before Defendant Sturm contemporaneously executed the two documents on July 12, rescinded any attempted alteration, and put Defendant Sturm on notice that reliance on the letters as an modification of her non-solicitation or non-compete agreements would be misplaced.

Defendants Freeman, Sturm, Soles, and Goins agreed in their Confidentiality, Non-Competition and Equipment Agreements that Missouri law should govern any dispute regarding the terms of their agreements. Defendants' assertion that conflict of law principles require the application of Oklahoma law is unpersuasive. Each state has a substantial interest in the validity of the restrictive covenants. Even assuming that Missouri were the default state and that an Oklahoma court would be more likely to find the covenants unenforceable, there is no indication that Missouri lacks all interest in the transaction or that Oklahoma's interest in the matter is materially greater than Missouri's. *See* Restatement (Second) Conflict of Laws § 187 (2012); *Emerson Elect. Co. v. Rogers*, 418 F.3d 841, 846 (8th Cir. 2005).

## B. Injunctive Relief Analysis

In balancing the interest of employers in engaging a highly trained workforce without the risk of losing customers and business secrets when employees leave their employment against employees' interest in having mobility between employers to advance their careers and provide for their families, Missouri courts generally enforce non-competition agreements that are demonstratively reasonable. *See Whelan Sec. Co. v. Kennebrew*, 2012 WL 3627773 at * 3 (Mo. banc August 14, 2012). Such agreements are reasonable if they are no more restrictive than is necessary to protect the employer's legitimate interests. *Id.* The agreement must be narrowly

---

resources manager could have altered the choice-of-law provision.

9

tailored in terms of time and geography, and must protect legitimate employer interests "beyond mere competition by a former employee." *Id.* Under Missouri law, "a non-compete agreement is enforceable 'only to the extent that the restrictions protect the employer's trade secrets or customer contacts.'" *Id.* quoting *Healthcare Servs. of the Ozarks, Inc. v. Copeland*, 198 S.W.3d 604, 610 (Mo. banc 2006). As to Defendants Freeman, Sturm, Goins, and Soles, the covenants and injunction only apply to the region[6] in which these employees worked for TLC, and only extend for one year from the time at which these defendants left TLC's employ.

The Court finds that, as to these individual defendants and NJoy Vision, Plaintiffs have met their burden of establishing that preliminary relief is warranted. First, the Court finds that Plaintiffs have shown the likelihood of success on the merits. The individuals knowingly executed non-compete agreements. There is evidence that these individuals had access to confidential or proprietary information in their positions with TLC. TLC had a protectable interest in its customer base. The individual defendants had relationships with TLC employees and had knowledge and influence to recruit TLC employees. There is evidence that these defendants have contacted TLC physician affiliates and that they have recruited TLC employees. The Court finds that there is the threat of irreparable harm to Plaintiffs if Defendants are not restrained from using information and influence they acquired during their tenure with TLC. Next the balance between the harm and the injury that granting the temporary restraining order will inflict favors granting the requested relief. The Court is persuaded that Defendants possess information that could be used for the purpose of causing irreparable harm to Plaintiffs in the form or lost customers and a diminished competitive position. Finally, the public interest is

---

[6]Defendant Goins' agreement does not appear to apply to Oklahoma City.

protected by enforcing valid contracts. Thus, this Court finds that the *Dataphase* factors have been met with respect to Defendants Freeman, Sturm, Goins, Soles and nJoy Vision.

Regarding Defendant Holsted, the Court finds that Minnesota law governs the enforcement of her non-compete agreement. Although Minnesota law also would favor issuing a temporary restraining order in this matter, the Court notes that Holsted, whose last day of work was April 30, 2012, is apparently unemployed, and that the period to which her restrictive covenants applies expires no later than October 30, 2012. As to Defendant Holsted, Plaintiffs have not shown the requisite threat of irreparable harm. *See Dataphase*, 640 F.2d at 114. Accordingly, the Court finds that Plaintiff's have not satisfied their burden to establish that preliminary relief is warranted as to Defendant Holsted.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Temporary Restraining Order [ECF No. 4] is **GRANTED in part, and DENIED in part**. Plaintiffs' Motion is granted as to Defendants Freeman, Sturm, Goins, Soles, and NJoy Vision. Plaintiffs' Motion is denied as to Defendant Holsted. Defendants Freeman, Sturm, Goins,[7] Soles, and NJoy Vision, and all other persons who are in active concert or participation with them who receive actual notice of this Court's Order, are temporarily enjoined and restrained from:

> a. directly or indirectly, either on Defendants' own account or on behalf of any other person or organization, engaging in, entering into or participating in any way in any business or enterprise in Oklahoma City, Oklahoma and Tulsa, Oklahoma, which competes with any business conducted by TLC during the course of Defendants'

---

[7]This Order applies to Defendant Goins only in any business enterprise in Tulsa, Oklahoma.

employment with TLC, including the ownership, management, and operation of centers where refractive laser eye procedures are performed including laser assisted in-situ keratectomy ("LASIK") and photorefractive keratectomy ("PRK");

b. directly or indirectly soliciting or attempting to solicit, diverting or attempting to divert, servicing or attempting to service the account or business of any of TLC's customers, including surgeons and Affiliate Doctors in the Tulsa and Oklahoma City markets with whom Defendants had contacts and about whom they had access to confidential information (as identified on a customer list to be provided by TLC to Defendants, which shall be maintained as confidential by Defendants, shall not be copied or used in any way to generate a customer list, and shall be returned to TLC when the obligation expires);

c. directly or indirectly hiring away or attempting to hire away or otherwise engaging any employee, key advisor, or consultant of TLC;

d. directly or indirectly interfering or attempting to interfere in any way with TLC's relationships with any of its vendors and suppliers, including without limitation, inducing or attempting to induce any vendor or supplier to TLC to change the terms of its dealings with TLC;

e. directly or indirectly interfering or attempting to interfere in any way with TLC's business and contractual relationships with any of its Affiliate Doctors and surgeons;

f. divulging, or causing to be divulged, communicating or causing to be communicated, publishing or causing to be published, or otherwise disclosing or causing to be disclosed to any person, firm, corporation, association, or entity, any

confidential information as detailed in the Complaint.

**IT IS FURTHER ORDERED** that Defendants shall, within five (5) days of the date of this Order return to TLC any and all records and documents in whatever form (whether original, copied, computerized, or handwritten) that were in any way obtained by Defendants during their period of their employment with TLC, including but not limited to, any records or documents containing TLC's confidential information. Defendants shall take reasonable steps to ensure that all potentially relevant information, including any confidential information belonging to TLC that is stored in electronic form on a computer-based system, is preserved, and not erased, deleted, or otherwise destroyed.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Expedite Discovery [ECF No. 5] is **GRANTED**. The parties are directed immediately to notice depositions and serve written interrogatories and document production requests, with the provision that such interrogatories and requests be completed or answered within five (5) business days of service of notice. The parties are encouraged to confer and agree on a time and place to take any depositions in a timely fashion. The parties may each serve up to ten (10) written interrogatories, and up to ten (10) document production requests. These requests and notices may be served via facsimile or e-mail, with service effective on the day of transmission. All parties may immediately serve subpoenas on relevant non-parties, and require production of any requested documents within ten (10) business days of service.

**IT IS FURTHER ORDERED** that TLC shall provide a surety bond or deposit in the amount of ten thousand dollars ($10,000) as security for the payment of such costs and damages (if any) as may be incurred or suffered by Defendants if Defendants are found to have been wrongfully restrained.

**IT IS FURTHER ORDERED** that this Temporary Restraining Order shall not be effective until Plaintiffs execute and file with the Court, a bond, in conformity with the law in the amount of ten thousand dollars ($10,000).

**IT IS FURTHER ORDERED** that a Preliminary Injunction Hearing will be held in the United States District Court for the Eastern District of Missouri, Courtroom 10 South, on **Tuesday, November 13, 2012**, at **9:00 a.m.** Counsel for all parties affected by possible injunctive relief shall be present.

Dated this   24th   day of October, 2012.

_E. Richard Webber_
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE