UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION


TLC VISION (USA) CORPORATION,    )
& TLC HOLDINGS, INC.,    )
      Plaintiffs,    )
    )
    vs.    )    Case No. 4:12CV01855ERW
    )
JARED CHRISTOPHER FREEMAN,    )
DAWN HOLSTED, MARY JO'EL    )
STURM, STEPHANIE GOINS, &    )
NJOY VISION!, LLC    )
      Defendants.    )


## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant nJoy Vision!, LLC's ("nJoy") Motion to Dismiss for Lack of Personal Jurisdiction and Request for Expedited Ruling [ECF No. 26]. NJoy motions the Court, pursuant to Federal Rule of Civil Procedure 12(b)(2), to dismiss the claims of Plaintiffs TLC Vision (USA) Corporation's and TLC Holdings, Inc. (collectively referred to as "TLC") for lack of personal jurisdiction. The Court heard arguments from the parties on the Motion to Dismiss at a hearing held on November19, 2012. Based upon a review of the file, record and proceedings herein, and for the following reasons, the Motion is denied.

## I.    BACKGROUND

Plaintiffs have filed a Complaint against Defendants Jared Christopher Freeman, Dawn Holsted, Mary Jo'el Sturm, Stephanie Soles, Stephanie Goins, and nJoy, asserting claims for Breach of Contract, Tortious Interference with Contractual and/or Business Relationships, and Civil Conspiracy [ECF No. 1].[1] TLC is a Delaware corporation, with its principal place of

---

[1]The Court granted Plaintiffs' motion for Leave to File Amended Complaint on December 5, 2012. The fully briefed Motion to Dismiss remained pending to be ruled by this Court [ECF No. 65].

business in Chesterfield, Missouri. According to TLC, it is engaged in the highly competitive business of providing access to refractive lasers and related services needed by optometrists and ophthalmologists to provide vision correction services to patients. TLC states that it provides turnkey surgical centers for ophthalmic surgeons, and that it has developed the nation's largest network of ophthalmologists and optometrists, referred to as "affiliate doctors," many of whom refer patients for surgery at TLC centers. TLC claims it has "developed and/or acquired and maintained certain confidential, proprietary, and trade secret information regarding its business, processes, and customers including, but not limited to. . . Affiliate Doctor lists and contact information." *See* [ECF No. 1, ¶ 22].

TLC alleges that Defendants are two former TLC vice presidents, one former TLC director, two former TLC managers, and NJoy Vision, a company formed to operate refractive eye surgery centers in competition with TLC in Oklahoma City and Tulsa markets. TLC states that Defendants signed employment agreements as a condition of their employment with TLC, because Defendants would have access to confidential TLC information, which would supply them with highly specialized and valuable information about TLC's business and customers. TLC alleges that, with the exception of Defendant Holsted, and although differing slightly, the employment agreements preclude, for a one-year period following termination of their TLC employment relationship, defendants from (a) competing in the Tulsa and Oklahoma City markets, (b) soliciting TLC affiliate doctors and surgeons, at a minimum, in the Tulsa and Oklahoma City markets,[2] (c) soliciting TLC employees, and (d) using or disclosing TLC's confidential information. TLC avers that Defendant Holsted's agreement contains the same

_____

[2]Defendant Goins' non-competition agreement extends "Territory" defined "as a 25 mile radius of the center(s) where Employee provided serviced to the Company" [ECF No. 1-13, p. 1].

limitations, but her restrictions were to be effective for a period of six months, rather than one year post-TLC employment. TLC contends that Defendants violated their employment confidentiality and non-competition agreements by working for a TLC competitor, recruiting TLC employees, soliciting TLC customers, and stealing TLC's confidential information. In their Complaint, TLC sought an Order temporarily, preliminarily, and permanently enjoining Defendants from certain activities, which Plaintiffs allege violate employment agreements executed by the parties. On October 21, 2012, Defendants filed a Joint Response in Opposition to Plaintiffs' Motion for Temporary Restraining Order [ECF No. 12]. On October 22, 2012, a motion hearing was held regarding TLC's motion for a Temporary Restraining Order. This Court subsequently granted, in part, TLC's motion for a Temporary Restraining Order ("TRO") against NJoy and other Defendants [ECF No. 41].

In the instant Motion, filed on October 30, 2012, nJoy argues that TLC's claims against NJoy should be dismissed for a lack of personal jurisdiction. NJoy maintains that it lacks the minimum contacts necessary to support a constitutional exercise of personal jurisdiction in this Court. According to nJoy, it is a Texas limited liability company registered to do business in Oklahoma, and does not have any physical locations, employees, representatives or agents in Missouri. NJoy asserts that the alleged acts giving rise to the claims against it took place entirely in Oklahoma, and nJoy does not have any presence in or conduct any business in Missouri. In his Declaration [ECF No. 27-1], John Kobza, Senior Vice President and Manager of nJoy, states that nJoy is in the business of providing access to refractive lasers and related services to optometrists and ophthalmologists, and it has never provided any such access or services in Missouri. He also avers that nJoy does not advertise or solicit that business in Missouri, nor has it ever done so. Kobza further contends that nJoy is not registered as a foreign corporation

authorized to do business in Missouri, nor does it offer its services for sale over the internet to customers in any state, including Missouri. Finally, Kobza contends that nJoy has never sued or been sued in any court in Missouri, state or federal.

NJoy acknowledges that it "engaged in further research" to determine whether it wanted to enter the Missouri market [ECF No. 27]. Then, nJoy cites to the following "isolated contacts" with Missouri: Telephone calls by Dr. Jim Owen, an nJoy independent contractor, to an optometrist, Dr. Matt Wickham, who resides in Missouri; and a trip by Dr. Owen and Kobza, as representatives of nJoy, to St. Louis for two separate meetings with an ophthalmologist, Dr. Stephen Wexler, and an attorney, Brian Andrew. In his declaration, Dr. Wickham avers that nJoy contacted him regarding the possibility of opening an nJoy center in Missouri. Njoy nevertheless emphasizes that it is undisputed that no center was opened, nor was Dr. Wickham, still employed by TLC, offered a position with nJoy. NJoy further notes that Andrew was no longer employed by TLC at the time of the meeting, nor did TLC allege that Andrew was subject to a non-compete agreement.

Additionally, according to nJoy, the ophthalmologist, Dr. Wexler, initiated contact with nJoy. NJoy maintains that he was not extended an offer, is still employed by TLC, and nJoy has had no additional dealings with him. NJoy adds that it has not evaluated or considered further business prospects in Missouri since this meeting. NJoy contends that TLC's claims are premised on competition occurring only in Oklahoma, and do not arise out of the "isolated contacts " that exist with Missouri. Furthermore, nJoy argues that these isolated contacts do not rise to the level of minimum contacts necessary, under due process considerations, to establish general or specific personal jurisdiction.

TLC argues that this Court has personal jurisdiction as nJoy's contacts with Missouri are directly related to the alleged misconduct, namely nJoy's pattern of luring TLC's employees to work for it as part of their plan to enter the Missouri market by tortiously interfering with TLC's contracts and customers.  TLC maintains that nJoy physically inserted itself into Missouri when John Kobza, Senior Vice President and Manager of nJoy, and Jim Owen, agent of nJoy, traveled to Missouri and met with Dr. Wexler, a current employee of TLC, and Brian Andrew, former general counsel of TLC.  TLC alleges nJoy met with Wexler to discuss future employment, and met with Andrew to discuss retaining his services.  In addition to their assertions of physical presence in the forum, TLC also provides the affidavit of Matt Wickham, a TLC employee residing in Missouri, attesting that Owen made two phone calls to him about opening an nJoy facility in St. Louis [ECF No. 30-3, ¶¶ 2-4, 7].

Additionally, TLC asserts that nJoy's extraterritoral acts in Oklahoma tortiously interfered with TLC's Missouri employment contracts, providing a basis for personal jurisdiction.  TLC contends that nJoy knew that the individual defendants, Jared Freeman, Mary Sturm, Stephanie Soles, and Stephanie Goins, had Missouri employment contracts containing non-competition agreements, and Missouri forum selection clauses, choice-of-law, and personal jurisdiction provisions.  TLC also claims that nJoy knew TLC was headquartered in Missouri and would suffer injury there.  As such, nJoy had fair warning that the effects of their conduct could be felt in Missouri and they could be haled into court here.

## II.      DISCUSSION

### A.      Waiver of Personal Jurisdiction

As an initial matter, the Court will address whether nJoy waived its personal jurisdiction defense by failing to properly raise it.  In nJoy's Reply Supporting its Motion to Dismiss [ECF

No. 48], nJoy maintains that it properly raised lack of personal jurisdiction as a defense. NJoy claims that it challenged jurisdiction in its October 21, 2012 Joint Response in Opposition to Plaintiffs' Motion for Temporary Restraining Order [ECF No. 12] – deeming this response, "its first defensive move."  Footnote 1 of the response stated "The filing of this response to Plaintiffs' Motion for Temporary Restraining Order is not intended to submit to the jurisdiction of this Court or waive the defenses available to Defendants under Federal Rule of Civil Procedure 12(b)(2)-(3).  Defendants intend to file a motion to dismiss for lack of personal jurisdiction and also file a motion to transfer this case to a United States District Court in Oklahoma pursuant to 28 U.S.C. § 1404 and § 1406."  Additionally, nJoy notes that Defendants' counsel remarked to the Court at the hearing on Plaintiffs' Motion for Temporary Restraining Order, that a Motion to Dismiss for Lack of Personal Jurisdiction would be filed.  At the October 22, 2012 hearing, Defendants' counsel noted, "[t]here is no personal jurisdiction in our judgment as to some of the Defendants. Later this week we will be filing a Motion to Dismiss some of the Defendants for lack of personal jurisdiction" [ECF No. 27-2, pp. 33-34].[3]

NJoy also claims that lack of personal jurisdiction was raised in its motion to Reconsider and Vacate Temporary Restraining Order [ECF No. 21] filed with the Court on October 26, 2012.  In this motion, Defendant nJoy indicates in a footnote that "[t]here are additional compelling reasons for vacating the TRO as to nJoy."  The motion further clarifies that "as nJoy will fully explain in its yet-to-be filed motion to dismiss, the Court lacks personal jurisdiction over nJoy because of its lack of contacts with the State of Missouri."

_____

[3]At the same time, Defendants also noted their intention to file a motion to transfer on forum non conveniens grounds.

6

TLC, on the other hand, argues that nJoy has waived its objections to this Court's personal jurisdiction over it by its actions in this litigation. In their Sur-Reply in Opposition to Defendant nJoy Vision, LLC's Motion to Dismiss [ECF No. 51], TLC contends that nJoy waived its objection to personal jurisdiction by its conduct, specifically, through its counsel entering their appearance on behalf of nJoy without any limitation or indication that they did so for the sole purpose of contesting personal jurisdiction over nJoy. TLC also points out that prior to filing the instant Motion, nJoy argued the merits of the case at the hearing, served discovery requests on TLC, engaged in forensic and other discovery, moved to increase the bond set by the Court, and asked the Court to reconsider its Order granting the TRO.

Because the personal jurisdiction requirement recognizes and protects an individual liberty interest, it may be waived. *Ins. Corp. of Ireland v. Compagnie des Bauxites*, 456 U.S. 694, 701–705, 102 S.Ct. 2099, 2104–2105, 72 L.Ed.2d 492 (1982). The United States Court of Appeals for the Eighth Circuit has held that the defense of lack of personal jurisdiction may be waived in two ways. Under Federal Rule of Civil Procedure 12, the defense may be waived if it is neither raised by motion before the answer or asserted in a responsive pleading. *Yeldell v. Tutt,* 913 F.2d 533, 539 (8th Cir. 1990); *Alger v. Hayes*, 452 F.2d 841, 844 (8th Cir. 1972).[4] Rule 12, however, "sets only the outer limits of waiver; it does not preclude waiver by implication." *Yeldell*, 913 F.2d at 539 (quoting *Marquest Med. Prod. v. EMDE Corp.*, 496 F. Supp. 1242, 1245 n.1 (D. Col. 1980)). Rule 12's requirements are intended to avoid delay and simplify federal court proceedings. *Id.* Thus, the personal jurisdiction defense may also be "lost

---

[4]Rule 12(b) of the Federal Rules of Civil Procedure provides in this regard: "Every defense, in law or fact . . . shall be asserted in the responsive pleading . . . except that the following defenses may at the option of the pleader be made by motion: . . . (2) lack of jurisdiction over the person . . ." The Rule further provides: "A motion making any of these defenses shall be made before pleading if a further pleading is permitted."

by failure to assert it seasonably, by formal submission in a cause, or by submission through conduct." *Id.* (quoting *Neirbo Co. v. Bethlehem Shipbuilding Corp*., 308 U.S. 165, 168, 60 S.Ct. 153, 155, 84 L.Ed. 167 (1939)).

Here, nJoy's asserts that the defense was raised in Defendants' Joint Response in Opposition to Plaintiffs' Motion for Temporary Restraining Order. However, as noted above, Defendants merely indicated in a footnote that the response was not intended to waive the defense, and that they intended to file a motion to dismiss for lack of personal jurisdiction. Defendants did not indicate which of them would be at issue in their forthcoming motion. The Eighth Circuit has held that a personal jurisdiction defense must be raised in a clear and unambiguous way. *Network Prof'ls, Inc. v. Network Intern. Ltd*., 146 F.R.D. 179, 182-183 (D. Minn. 1993) (citing *Alger*, 452 F.2d at 843). In *Alger*, the defendant stated in his answer that the court lacked jurisdiction, without specifying whether he was challenging subject matter jurisdiction or personal jurisdiction. *Id.* The Eighth Circuit held that the ambiguous statement in the defendant's answer was insufficient to preserve his personal jurisdiction defense, specifically stating that the record revealed that "defendant did not assert any objection to jurisdiction over his person in the answer filed." *Id.* Here, Defendants' statement set forth in a footnote is likewise ambiguous. It denotes a future intent to file a motion based on personal jurisdiction, but does not identify nJoy or any particular defendant as the subject of the forthcoming motion. Similarly, in the hearing, Defendants only indicate that they will file a motion to dismiss based on lack of jurisdiction as to *some* of the Defendants, again, not identifying nJoy unambiguously. The first time nJoy is specifically identified as contesting personal jurisdiction is in nJoy's later Motion to Vacate, filed on October 26, 2012 [ECF Nos. 20-21], four days prior to the filing of the instant Motion to Dismiss. By this point, as TLC notes, Defendants had filed their response

to TLC's TRO motion - their "first defensive move," addressed the merits of the case, and moved to increase bond. Thus, this Court finds that nJoy failed to unambiguously raise the defense of lack of personal jurisdiction in its first responsive pleading.

However, even in the absence of this conclusion, the Court also finds that nJoy's subsequent actions waived its right to assert the defense. By its conduct a party may waive objections to personal jurisdiction. *MAK Automation, Inc. v. G.C. Evans Sales & Mfg. Co.*, No. 4:06CV1579MLM, 2008 WL 185787 at * 3 (E.D. Mo. Jan. 18, 2008) (citing *Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196, 1199 (8th Cir. 1990); *Van Praag v. Columbia Classics Co.*, 849 F.2d 1106, 1109 (8th Cir. 1988) (citation omitted). A defendant "may submit to the jurisdiction of the court by appearance." *MAK Automation*, 2008 WL 185787 at * 3 (citing *Ins. Corp. of Ireland*, 456 U.S. 694, 703, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982)). A defendant, however, may make a limited or special appearance for purposes of contesting personal jurisdiction. *Garrett v. Albright*, No. 4:06CV4137NKL, 2008 WL 920310, at * 3 (W.D. Mo. Apr. 1, 2008). "If the appearing party requests relief or discloses a purpose that goes beyond challenging the jurisdiction of the court over the subject matter or the parties, the appearance will be considered general, and all jurisdictional challenges will be deemed waived." *Id.* (citing *Nationwide Eng'g & Control Sys., Inc. v. Thomas*, 837 F.2d 345, 347 (8th Cir. 1988)); *Ins. Corp. of Ireland*, 456 U.S. at 703. On October 12, 2012, counsel for Defendants, including nJoy entered their appearance. The Court finds no indication that Defendants made their appearance, however, for the limited purpose of contesting jurisdiction over nJoy.

Furthermore, Defendants addressed the merits of the action prior to filing the instant Motion, and before unambiguously identifying nJoy as a Defendant to which personal jurisdiction was contested. Defendants may waive their personal jurisdiction defense by raising

it after the court considers the merits or quasi-merits of the case. *Network Professionals*, 146 F.R.D. at 184. In *Network Professionals*, the court found waiver when defendants raised a personal jurisdiction defense after the court contemplated the merits or quasi-merits of the case in a preliminary injunction motion. *Id.* Here, nJoy appeared at the hearing and challenged TLC's TRO motion. A preliminary matter such as personal jurisdiction should have been raised and disposed by nJoy before this Court considered the merits or quasi-merits of the controversy. *See Marquest*, 496 F. Supp. at 1246 (cited with approval in *Yeldell*, 913 F.2d at 539)). Having submitted to the Court's jurisdiction for purposes of the temporary restraining order, the defendants could not assert a personal jurisdiction defense after the TRO had issued. Additionally, "[b]y submitting extensive memoranda to the district court" a defendant waives its right to contest personal jurisdiction. *DeBoer v. Mellon Mortg. Co.,* 64 F.3d 1171, 1176 (8th Cir. 1995). A defendant avails itself of the court's procedures by filing documents and participating in court proceedings. *Id.* Here, nJoy served discovery requests on TLC, moved to increase the bond set by the Court, and asked the Court to reconsider its Order granting the TRO. Finally, the passage of time is also a relevant *factor* for the court to consider in determining whether a defendant has waived personal jurisdiction. *See Knowlton,* 900 F.2d at 1199; *MAK Automation*, 2008 WL 185787 at * 3 (noting that defendant did not file a dispositive motion based on an absence of personal jurisdiction until the matter had been pending for approximately nine months). Here, the dispositive motion was filed only two weeks after the Complaint, and, unlike Defendants' other conduct, does not argue favorably for waiver. Although the passage of time was not unreasonable, the Court finds that the weight of nJoy's conduct supports waiver. Thus, the Court finds that nJoy failed to comply with the spirit of Rule 12, or its literal requirements, resulting in waiver of its personal jurisdiction defense.

## B.     Personal Jurisdiction

As stated above, in the instant Motion, nJoy contests whether this Court may exercise personal jurisdiction over it.  In the context of a motion to dismiss, this Court has held as follows:

> The party invoking jurisdiction of a federal court bears the burden to show that jurisdiction exists.  To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff is only required to make a prima facie showing of personal jurisdiction over the defendant.  If the district court relies on pleadings and affidavits, the court must look at the facts in the light most favorable to the party invoking personal jurisdiction, and resolve all factual conflicts in favor of that party.

*Anheuser–Busch, Inc. v. City Merch.,* 176 F. Supp.2d 951, 955 (E.D. Mo. 2001) (internal citations omitted).[5]  "If the defendant controverts or denies jurisdiction, the plaintiff bears the burden of proving facts supporting personal jurisdiction."  *Wells Dairy, Inc. v. Food Movers Int'l, Inc.,* 607 F.3d 515, 518 (8th Cir. 2010) (internal citation omitted).  Plaintiff's "showing must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto."  *Id.* (internal quotation marks omitted)

A federal court must engage in a two-step inquiry to determine whether it may exercise jurisdiction over a non-resident defendant.  Personal jurisdiction can be exercised by a federal court in a diversity suit, only if authorized by the forum state's long-arm statute and permitted by the Due Process Clause of the Fourteenth Amendment.  *Viasystems, Inc. v. EBM-Papst St.*

---

[5]The Court notes that its November 19, 2012 hearing on nJoy's Motion to Dismiss for lack of personal jurisdiction was a generalized hearing.  It was *not* a "full-blown evidentiary hearing" on the issue of personal jurisdiction.  Both parties presented only argument - not evidence - at the hearing.  *See Dakota Indus., Inc.,* 946 F.2d at 1387 ("[J]urisdiction need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing.").

*Georgen GmbH & Co., KG*  646 F.3d 589, 593 (8ᵗʰ Cir. 2011).[6]  First, the Court must determine

whether the cause of action arises from an activity covered by the state long-arm statute.

*Johnson v. Arden,* 614 F.3d 785, 794 (8th Cir. 2010) (citations omitted).  If authorized by the

long-arm statute, the Court then must determine whether the defendant has sufficient minimum

contacts with the state to satisfy due process requirements.

### 1.      Missouri's Long Arm Statute

Accordingly, this Court must first determine whether nJoy's actions fall within the

purview of Missouri's long-arm statute.  In Missouri, specific personal jurisdiction is authorized

only to the extent that "the [cause of] action arose out of an activity covered by [Missouri's] long-

arm statute."  *Viasystems*, 646 F.3d at 593 (citing *Conway v. Royalite Plastics, Ltd.,* 12 S.W.3d

314, 318 (Mo. banc 2000)).  While the long arm statute extends jurisdiction to the limits of the

due process clause, it does so only for acts within its enumerated categories.  *Dairy Farmers of*

---

[6]Although some cases from the Eighth Circuit have collapsed these two inquiries, as "the Missouri long-arm statute authorizes the exercise of jurisdiction over non-residents to the extent permissible under the due process clause," *Romak USA v. Rich,* 384 F.3d 979, 984 (8th Cir. 2004) (quoting *Porter v. Berall,* 293 F.3d 1073, 1075 (8th Cir. 2002)), the recent decision by the Eighth Circuit, in *Myers v. Casino Queen, Inc.*, 689 F.3d 904, 909-910 (8th Cir. 2012)*,* requires this Court to apply a two-step analysis.  The court in *Myers* noted that the reach of a state's long-arm statute is a matter of state law, and "federal courts are required to accept the interpretation given the statute by the state supreme court [.]"  *Mountaire Feeds, Inc. v. Agro Impex, S.A.,* 677 F.2d 651, 653 (8th Cir. 1982); *see also Viasystems,* 646 F.3d at 593 n.2 (noting we are bound by the decisions of the Missouri Supreme Court when conducting a jurisdictional analysis in a diversity case).  Thus, when the court in Myers looked to the most recent decision involving a question of personal jurisdiction, it found that the Missouri Supreme Court held it was necessary to conduct two separate inquiries: one inquiry to establish if a defendant's conduct was covered by the long-arm statute, and a second inquiry to analyze whether the exercise of jurisdiction comports with due process requirements.  *See Bryant v. Smith Interior Design Grp., Inc.,* 310 S.W.3d 227, 231 (Mo. 2010) ("First, the court inquires whether the defendant's conduct satisfies Missouri's long-arm statute.  If so, the court next evaluates whether ... asserting personal jurisdiction over the defendant comports with due process." (internal citations omitted)); *see also Angoff v. Marion A. Allen, Inc.,* 39 S.W.3d 483, 486 (Mo. banc 2001); *Chromalloy Am. Corp. v. Elyria Foundry Co.,* 955 S.W.2d 1, 4 (Mo. banc 1997).

*Am., Inc. v. Bassett & Walker Intern., Inc.*, No. 12-1723, 2012 WL 6682023, at *4 (8th Cir.

2012). Missouri's long-arm statute authorizes personal jurisdiction over defendants who, *inter*

*alia,* transact business, make a contract, or commit a tort within the state. Mo. Rev. Stat. §

506.500.1.[7] Missouri courts have interpreted the long-arm statute to include "extraterritorial acts

of negligence producing actionable consequences in Missouri." *State ex rel. William Ranni*

*Assocs., Inc. v. Hartenbach,* 742 S.W.2d 134, 139 (Mo. 1987). Extraterritorial acts of negligence

that produce foreseeable consequences in Missouri are sufficient to satisfy the third enumerated

category of the statute, "commission of a tortious act within Missouri." The Eighth Circuit has

adopted a *foreseeability* standard to be applied when evaluating whether jurisdiction is

appropriate over a tortious act occurring in another state with actionable consequences in

Missouri.[8] *Myers*, 689 F.3d at 911. If a defendant can reasonably foresee his or her negligent

---

[7]The basis for exercising personal jurisdiction over a non-resident party in Missouri is Missouri's long-arm statute. The statute provides:

1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:
(1) The transaction of any business within this state;
(2) The making of any contract within this state;
(3) The commission of a tortious act within this state[.] Mo. Rev. Stat. § 506.500.

[8]*Myers* acknowledged the split in Missouri courts over whether to apply a "deliberate design" standard in the context of an extraterritorial tort, or a "foreseeability standard." *Myers*, 689 F.3d at 909. *Compare Nelson v. R. Greenspan & Co., Inc.,* 613 F.Supp. 342, 345 (E.D.Mo.1985) (finding long-arm statute was satisfied when "[defendant] sets in motion a course of action deliberately designed to move into the forum state in order to injure plaintiff's business"), *with Noble v. Shawnee Gun Shop, Inc.,* 316 S.W.3d 364, 372 (Mo. Ct. App. 2010) (applying a foreseeability standard to extraterritorial torts, not a "deliberate design" standard). The Eighth Circuit, in *Myers*, followed the Missouri Supreme Court's refusal to apply a "deliberate design" standard, and employed a foreseeability analysis. *Myers*, 689 F.3d at 909. *See Bryant,* 310 S.W.3d at 231–32 (finding personal jurisdiction existed in negligent misrepresentation case without applying "deliberately designed" standard).

actions having consequences felt in Missouri, jurisdiction is authorized. *Id.*

As noted, Missouri's long arm statute authorizes jurisdiction over defendants that transact business or commit a tort within the state. This Court finds that nJoy's contacts with Missouri and nJoy's extraterritorial acts comport with Missouri's long arm statute. NJoy itself acknowledges that it visited Missouri to evaluate opening a vision center, and met with TLC employee, Dr. Wexler and former TLC employee Brian Andrew. NJoy also made two phone calls to Missouri to discuss the possibility of opening a center in St. Louis with TLC employee, Dr. Wickham [Wickham Declaration, ECF No. 30-3, ¶¶ 2-4, 7]. Although nJoy frames their contacts with Missouri as part of a broad research effort on other U.S. markets across the nation [ECF No. 27-1, ¶ 5], TLC argues that nJoy's pro formas identify only St. Louis, Tulsa, and Oklahoma City [ECF No. 51].

Njoy's physical injection into Missouri and communications with the forum alone may satisfy long arm jurisdiction as "transacting business" in the forum. Missouri courts construe "transaction of any business" broadly. *Dairy Farmers*, *Inc.*, 2012 WL 6682023, at *1 (citing *State ex rel. Metal Serv. Ctr. of Ga. v. Gaertner*, 677 S.W.2d at 327). A person or firm transacts business by visiting Missouri or sending its product or advertising here. *See Chromalloy Am. Corp. v. Elyria Foundry Co.*, 955 S.W.2d 1, 4 (Mo. banc 1997) (finding that the foreign actor transacted business by "travel[ing] to Missouri intending to contact a Missouri corporation and propose the purchase of one of its assets"); *Boatman's First Nat'l Bank of Kansas City v.Bogina Petroleum Eng'rs*, 794 S.W.2d 703, 704 (Mo. App. 1990) (holding that a single visit by the foreign actor to Missouri was the transaction of business). NJoy cites to *Dairy Farmers,* in support of its contention that nJoy is a non-resident defendant which has *not* transacted business in the forum. However, in *Dairy Farmers*, the defendants' contacts with the Missouri forum

consisted solely of communications by phone, email, and fax with plaintiffs, including emailed requests for increases in a line of credit. Here, nJoy visited Missouri purposely to ascertain its suitability as a potential market in which to open a vision center [ECF No. 20-1, ¶¶ 5, 19]. NJoy sought out Missouri coextensively with its formation as an LLC [ECF No. 20-1, ¶¶ 2, 20], and as part of its plans to compete in the same industry as TLC. The Court finds that this conduct falls within Missouri's broad umbrella of "transacting business."

Even though nJoy's contacts with Missouri satisfy the enumerated category of "transacting business," the Court further finds that nJoy's alleged tortious extraterritorial acts in Oklahoma bolster jurisdiction by satisfying another category of Missouri's long-arm statute. According to the foreseeability standard enunciated in *Myers*, if nJoy can reasonably foresee that its negligent and tortious conduct in Oklahoma will have consequences in Missouri, jurisdiction is warranted. TLC maintains that nJoy tortiously interfered with business and contractual relationships by recruiting TLC employees, soliciting TLC customers and stealing TLC's confidential information, including listings of affiliate doctors. NJoy argues that all the claims pertain to Oklahoma employees and customers. However, the Court concludes that it should have been foreseeable to nJoy that consequences of this alleged negligent and tortious extraterritorial conduct would be felt in Missouri.

In the Declaration of Senior Vice President and Manager of nJoy, John Kobza, he explains that nJoy is a LLC whose sole member is Hall Brothers Investment Company, LP ("HBIC"), a Texas limited partnership and affiliate of Hall Capital, LLC [ECF No. 27-1, ¶ 3].[9] In nJoy's response to TLC's First Interrogatories, nJoy states that it is controlled by HBIC, and

---

[9]Kobza adds that he is a Senior Vice President, partner and board member of entities owned by Hall Capital, LLC [ECF No. 27-1, ¶ 3].

that "primary responsibility is assigned to John Kobza" [ECF No. 45-2, p. 16]. Kobza avers that before settling on a plan to form a new company (which would eventually become nJoy), Hall Capital and HBIC discussed the possibility of a possible management buyout of TLC [ECF No. 27-1, ¶ 4]. NJoy states that information regarding TLC was provided to it during discussions of the management buyout [ECF No. 45-2, p. 4]. This information included a financial summary provided by Defendant Holsted. *Id.* Also, nJoy acknowledges that discussions of TLC's business covered topics such as refractive surgery, the co-management model, and industry participants. *Id.* Clearly, nJoy would not only have been in possession of the knowledge that Missouri was TLC's principal place of business, but also how the tortious interference with their business would affect their overall financial position, and not just the market in Oklahoma. Surely, it would be foreseeable to nJoy that the scope of their actions would extend to Missouri. Thus, due to nJoy's alleged extraterritorial actions, this Court finds that the record satisfies the third enumerated category under Missouri's long-arm statute of "commi[ting] a tortious act within this state."

### 2.    Due Process

As nJoy's actions satisfy Missouri's long arm statute, the Court must next examine whether jurisdiction is permissible under the due process clause of the Fourteenth Amendment. Due process requires that a defendant have certain "minimum contacts" with the forum state for personal jurisdiction to be exercised. *Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Myers*, 689 F.3d at 911. In analyzing whether a defendant's minimum contacts with the forum state satisfy the principles of due process, the Eighth Circuit has held:

> The Due Process Clause requires that minimum contacts exist between the nonresident defendant and the forum state before the court can exercise jurisdiction over the defendant. Sufficient contacts exist when the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there,

and when maintenance of the suit does not offend traditional notions of fair play and substantial justice. In assessing the defendant's reasonable anticipation, there must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*Miller v. Nippon Carbon Co., Ltd.,* 528 F.3d 1087, 1090–91 (8th Cir. 2008) (internal quotations and citations omitted). The defendant's contacts creating personal jurisdiction must be more than "random," "fortuitous," or "attenuated." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985).

In the Eighth Circuit, the following five factors are examined to determine whether the requirements of due process have been met: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts[10]; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." *Miller,* 528 F.3d at 1091 (internal quotations and citations omitted). The first three factors are primary considerations, while the last two factors are secondary. *Pecoraro v. Sky Ranch for Boys, Inc.,* 340 F.3d 558, 562 (8th Cir. 2003). With respect to the third factor, the Court must distinguish between specific jurisdiction and general jurisdiction. *Bell Paper Box, Inc. v. U.S. Kids, Inc.,* 22 F.3d 816, 819 (8th Cir. 1994) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 nn.8,9 (1984)). "General jurisdiction arises when a defendant's contacts with the forum state are so continuous and systematic that the defendant may be subject to suit there for causes of action entirely distinct from the in-state activities; specific jurisdiction arises when the defendant has purposely directed its activities at the forum state, and the cause of action relates to those activities." *Furniture Brands Intern., Inc.*

---

[10]With respect to the quantity of contacts, the Court notes that even a single act can support jurisdiction, as long as it creates a "substantial connection" with the forum. *Burger King,* 471 U.S. at 475 n.18 (citing *McGee v. Int'l Life Ins. Co.,* 355 U .S. 220, 223 (1957)).

*v. Interior House, A.G.,* No. 4:11CV64JCH, 2011 WL 2899131, at ** 2-4 (E.D. Mo. Jul. 20, 2011) (citing *Norrise v. Union Pacific R. Co.,* No. 4:07CV02095AGF, 2008 WL 2859155 at *4 (E.D. Mo. July 23, 2008) (internal quotations and citations omitted)); *see also Miller,* 528 F.3d at 1091. TLC does *not* contend the basis for personal jurisdiction is nJoy's "continuous and systematic" contacts with the state required for *general* jurisdiction, and so the Court will consider whether nJoy's contacts are sufficient for specific jurisdiction.

The Court will first examine nJoy's contacts with the Missouri forum. The parties dispute whether the nature, quality, and quantity of nJoy's contacts with the forum state were significant. As noted earlier, in Kobza's Declaration [ECF No. 20-1], he states that the only contacts with the forum consist of a single trip to Missouri, in which he and Jim Owen met with Brian Andrew and Dr. Wexler,[11] and two phone calls made by Owen to Dr. Wickham in St. Louis.[12] Defendant nJoy characterizes these contacts with Missouri as "isolated" and part of its extensive research of future markets across the nation [ECF No. 27-1, ¶ 5]. TLC argues that the trip and calls are directly related to the misconduct alleged in this case - nJoy's pattern of luring TLC's current employees to work for it. TLC maintains that this tortious interference with their employees is a part of nJoy's plan to conduct business in Missouri.

---

[11]NJoy argues against jurisdiction by noting that Dr. Wexler initiated contact with nJoy. *See Porter v. Berall,* 293 F.3d 1073, 1076 (8th Cir. 2002) (observing that the district court refused to exercise jurisdiction where the nonresident defendant did not initiate the business relationship with the resident of the forum state). Although the initiation of contact can weigh against jurisdiction, here subsequent contacts by nJoy establish that it knowingly directed activities at the forum and Dr. Wexler.

[12]Although TLC initially argues that nJoy's meeting with Brian Andrew, former TLC general counsel is a contact with the forum [ECF No. 45], they do not mention him as a contact in their subsequent Sur-Reply [ECF No. 51]. NJoy argues against Andrew's significance as a contact as he is a former employee of TLC without an alleged non-competition agreement. As the Court finds the contacts with Dr. Wexler and Dr. Wickham sufficient, it need not consider Andrew any further.

The nature and quantity of the forum contacts, according to nJoy, neither rise to the level of minimum contacts required for due process, nor do they sufficiently relate to the claims in the action. Njoy compares its single trip to Missouri and phone calls to Dr. Wickham to the facts in *Pangaea, Inc. v. Flying Burrito LLC*, 647 F.3d 741, 747-749 (8th Cir. 2011), where the court found that a single trip to Arkansas was not sufficiently "related to" the claim to support specific personal jurisdiction. While the Court does agree that the forum-related contacts must be related to the cause of action, a single trip to the forum may form the basis for jurisdiction. *See Burger King,* 471 U.S. at 475 n.18; *Rural Media Group, Inc. v. Performance One Media, LLC*, 697 F. Supp. 2d 1097, 1107 (D. Neb. 2010) (concluding that "[a]lthough the alleged false statements were made during a single contact between [defendant] and [the forum], they were of such a nature and quality that [defendant] had fair warning that its actions in [the forum] might result in its being haled into court there."). The Court finds the facts of this case distinguishable from *Flying Burrito*. In *Flying Burrito*, the trip to the forum occurred *after* the act of trademark infringement giving rise to the suit. *Flying Burrito*, 647 F.3d at 744. Also, as the defendant in *Flying Burrito* was not aware of plaintiff's pending trademark application until after the defendant's alleged infringing act, the defendant could not have targeted or intended to avail itself of the Arkansas forum. *Id.* at 747-749. As in *Aylward v. Fleet Bank*, also cited by nJoy, it was merely happenstance that the plaintiff in *Flying Burrito* resided in the Arkansas forum. *See Aylward v. Fleet Bank,* 122 F.3d 616, 618 (8th Cir. 1997) ("[I]t seems to be merely happenstance that the [plaintiff] lives in Missouri. In other words, the chances seem equally likely that the [plaintiff] would live in any of the 50 states . . . Thus we see none of the kind of intentional reaching out to Missouri residents that seems to be contemplated by the case law"). The trip to Arkansas in *Flying Burrito* was attenuated and fortuitous, and did not give rise to the alleged

infringement violation.

Here, the Court finds that the alleged contacts are neither attenuated, random or fortuitous. *See Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1389 (8th Cir. 2011) ("The contacts with the forum state must be more than random, fortuitous, or attenuated.") (internal citation and quotations omitted); *Viasystems, Inc.*, 646 F.3d at 594. It was not just happenstance that TLC was located in Missouri. NJoy, as noted above, was aware of TLC's financial position and organization, including its principal place of business. NJoy visited Missouri purposely to ascertain its suitability as a potential market in which to open a vision center. NJoy sought out Missouri coextensively with its formation as an LLC, and as part of its plans to compete in the same industry as TLC. Although nJoy presents these contacts as part of a broad research effort on other U.S. markets across the nation [ECF No. 27-1, ¶ 5], TLC notes that nJoy's pro formas identify only St. Louis, Tulsa, and Oklahoma City as potential markets [ECF No. 51]. TLC argues that the evidence shows that these contacts were steps taken to open a center in St. Louis.

NJoy disputes the significance of the forum contacts by denying that Dr. Wexler or Dr. Wickham were extended employment offers, and states that TLC has failed to meet their burden to establish solicitation of these employees [ECF No. 82]. As such, nJoy argues that the contacts are entirely unrelated to the allegations against them, and that TLC's claims arise solely out of Oklahoma acts. The Court, however, finds that nJoy's actions in Missouri could be construed as part of a plan which gave rise to the claims against them. The Court does not find it necessary that TLC show that nJoy extended formal offers to Missouri employees. The meeting with Dr. Wexler, and conversations with Dr. Wickham could be construed as steps towards hiring TLC employees for a Missouri Vision Center, in availment of the forum. TLC offers the Declaration

of Dr. Wickham, as well as his deposition testimony [ECF Nos. 30-3, 45-1], which states that he was contacted regarding the possibility of nJoy opening a center in St. Louis. TLC further cites to the deposition testimony of John Kobza, nJoy Senior Vice President, in which he acknowledges that the purpose of the meeting was for Dr. Wexler to "see who Hall Capital was and who nJoy was" [ECF No. 46, pp. 207-208]. The Court finds the visits to Missouri purposeful, made with the intention of initiating business in the forum. *See Furniture Brands*, 2011 WL 2899131, at *4 (noting that, although defendant had never traveled to Missouri, the nature, quality and quantity of defendant's contacts with the forum were sufficient when a letter of credit executed for the benefit of a Missouri corporation contemplated future contacts in the state). The fact that Wexler and Wickham were ultimately not hired does not render the contacts insignificant.

TLC does not rely solely on its Missouri contacts as the basis of jurisdiction. TLC argues that nJoy's extraterritorial misconduct combined with its contacts within Missouri, support personal jurisdiction. This Court agrees. TLC maintains that nJoy tortiously interfered with the employment contracts of individual Defendants Freeman, Sturm, Soles and Goins. TLC contends nJoy knew that the TLC employees it had hired had contracts with a Missouri-based employer, and that those contracts contained Missouri forum-selection, choice-of law, and personal jurisdiction provisions. TLC cites to nJoy's response to TLC's First Interrogatories, in which nJoy concedes that it has "general knowledge of the existence of agreements between several individuals and TLC, including Joel Sturm, Dawn Holsted, John Potter, Bill Tullo, Brad Britton, and Stephen Wexler." [ECF No. 45-2, p. 12].[13] As such, TLC claims that, based on the

---

[13]The Court notes that, in nJoy's response to TLC's interrogatories, nJoy does not specifically identify *or exclude* Defendants Freeman, Goins and Soles as individuals to which it has general knowledge of an existing agreement with TLC. Nor does nJoy contend that it lacked

Missouri contractual provisions, nJoy had a reasonable expectation of being haled into the forum, satisfying due process.  TLC references the First Circuit case,  *Astro-Med, Inc. v. Nihon Kohden America, Inc.*, 591 F.3d 1 (8th Cir. 2009), in support of this proposition.

In *Astro-Med*, the defendant, Nihon Kohden, was fully aware of [plaintiff's] Astro-Med-Plant Employee Agreement, including its Rhode Island provisions, and persisted in negotiations with plaintiff Astro-Med's employee in the face of legal advice from counsel that to do so would pose a risk.  *Astro-Med*, 591 F.3d at 10.  Consequently, the court found that it must have been foreseeable to defendant Nihon Kohden, that it might be held accountable for [its actions] in a [Rhode Island] forum.  *Id.* (internal citations and quotations omitted).  NJoy argues that *Astro-Med*, as a First Circuit case, is not binding law, and further contends that it is distinguishable.  Unlike here, where the individual defendants contracts were executed in Oklahoma,  the contract at issue in *Astro-Med* was formed and executed in the forum.  *Id.*  The Court finds that while the locus of the contract may provide a stronger connection to the forum in *Astro-Med*, here, TLC's knowledge of the Missouri contract provisions, particularly the requirement that litigation take place in Missouri, provided a reasonable expectation that it might be held accountable in the forum.

Furthermore, in this Circuit, a third party may be bound by a forum selection clause where it is so closely related to the dispute such that it becomes foreseeable that it will be bound.  *Marano Enters. of Kan. v. Z–Teca Rests., L.P.,* 254 F.3d 753, 757 (8th Cir. 2001).  The district court in Minnesota applied this reasoning in *Medtronic,* where the court explained that the defendants were closely related because the third-party employer solicited employees while being "fully aware of their [non-compete] agreements and, hence, the forum selection clauses."

knowledge of these Defendants' Missouri contractual provisions.

*Medtronic, Inc. v. Endologix, Inc.,* 530 F. Supp. 2d 1054, 1057 (D. Minn. 2008). A company's lack of knowledge regarding a non-competition agreement, however, does not end the inquiry. *C.H. Robinson Worldwide, Inc. v. Rodriguez*, No. 12-264, 2012 WL 4856245, at * 5 (D. Minn. Oct. 12, 2012). In *Medtronic*, the court explained that even without knowledge of the forum selection clause, a third-party employer may be bound where "all of the defendants clearly share a common interest in this action: the right of [former employees] to solicit their former ... customers on behalf of their new employer." *Medtronic*, 530 F. Supp. 2d at 1057. Thus, the proper inquiry is whether, "the third party reasonably [should] foresee being bound by the forum selection clause because of its relationships to the cause of action and the signatory to the forum selection clause." *Id.* Moreover, courts will examine whether the defendants' interests are so closely aligned that they are represented by the same counsel. *Id.* at 1056; *C.H. Robinson Worldwide*, 2012 WL 4856245, at * 5 (finding that defendant Sun Commodities, the third-party employer, was subject to personal jurisdiction under the closely-related party doctrine, as it should have reasonably foreseen being bound to the forum selection clause because it shares a common interest with the defendant employee in his continued employment and is represented by the same counsel). Here, nJoy admits to having general knowledge of individual Defendants' agreements, which include Missouri forum selection clauses. Also, nJoy shares the same counsel as the individual Defendants, as well as a common interest with these Defendants in their right to solicit their former TLC customers. As such, under the reasoning of this Circuit, as well as the First Circuit, nJoy had a reasonable expectation of being haled into Missouri and subject to personal jurisdiction here.

In disputing TLC's contentions, nJoy makes the additional argument that the alleged tortious conduct outside the forum state is not a basis for specific jurisdiction under *Calder v.*

*Jones*, 465 U.S. 783 (1984).  In *Calder,* the Supreme Court held that when a defendant directs intentional, tortious actions at a resident of the forum, the defendant may reasonably anticipate being haled into court in the forum to answer for its conduct.  *See id.* at 790 (citing *World–Wide Volkswagen v. Woodson,* 444 U.S. 286, 297–298 (1980)).  Adopted from *Calder*, the Eighth Circuit's  "effects" test, provides that a defendant's tortious acts can serve as a source of personal jurisdiction only where the plaintiff makes a prima facie showing that the defendant's acts (1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered-and which the defendant knew was likely to be suffered - [in the forum state].  *Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010).  This Circuit has utilized the *Calder* test merely as an *additional factor* to consider when evaluating a defendant's relevant contacts.  *Id.* at 797-798.  Additionally, under the *Calder* analysis, a court may consider a company's headquarters as the location in which it would feel the brunt of the injury.  *See Anheuser-Busch*, 176 F. Supp.2d at 959.  The Eighth Circuit construes the *Calder* effects test narrowly, and holds that, *absent additional contacts*, mere effects in the forum state are insufficient to confer personal jurisdiction.  *See Hicklin Eng'g, Inc. v. Aidco, Inc.,* 959 F.2d 738, 739 (8th Cir. 1992) (per curiam)(emphasis added).

NJoy maintains that the *Calder* effects test was not met here as the alleged interference with Defendants Freeman, Sturm, Soles, and Goin's contracts was exclusively aimed at Oklahoma, not Missouri.  NJoy asserts that the alleged injuries from the asserted conduct will not occur in Missouri.  NJoy states that the injury is confined to Oklahoma and, correspondingly, TLC has sought to enjoin Defendants from competition in *Oklahoma*.  TLC, however, responds that the scope of their motion for a TRO was not confined to Oklahoma, nor was the Court's

Amended Memorandum and Order of November 2, 2012.[14]  Furthermore, as noted by the Court

above, TLC does make a showing that NJoy knew of the Missouri provisions in the Defendants'

contracts, including the selection of Missouri as the forum in which to litigate disputes.  NJoy's

knowledge of these provisions provides support that it expressly aimed at Missouri as a forum.

Additionally, as noted above, a company's headquarters may be deemed the forum where the

brunt of the injury is felt.  This is  particularly compelling here, where nJoy was aware of TLC's

financial position and organization, including the knowledge that Missouri is TLC's

headquarters.  As such, the Court finds that the alleged interference by nJoy with the individual

Defendants' contracts successfully meets the *Calder* effects test.

        In light of the foregoing, the Court concludes that nJoy's contacts with Missouri, and its

extraterritorial conduct aimed at Missouri, satisfy the factors under which due process is analyzed

in the Eighth Circuit.  The nature, quality, and quantity of the contacts with the forum, as well as

their relationship to the cause of action are sufficient to create a reasonable expectation of being

haled into court in Missouri.  Furthermore, as to the secondary factors, Missouri's interest in

providing a forum for its residents and the convenience of the parties, weigh in favor of personal

jurisdiction.  As noted above, TLC's principal place of business is in Missouri.  It is also

arguable that Missouri provides a more efficient and convenient forum as nJoy has a

commonality of representation, witnesses, and records with the individual Defendants not at

issue in the instant Motion.

---

[14]TLC states that the Court's November 2, 2012 Order temporarily enjoined nJoy,
**without geographic limitation**, from hiring or attempting to hire away or otherwise engage any
employee, key advisor, or consultant of TLC; from interfering with TLC's relationships with its
vendors and suppliers; from interfering with TLC's business and contractual relationships with
its Affiliate doctors and surgeons; and from divulging Confidential Information or causing such
information to be divulged. *See* [ECF No. 41, pp. 12-13].

Accordingly,

**IT IS HEREBY ORDERED** that Defendant nJoy Vision!, LLC's Motion to Dismiss

for Lack of Personal Jurisdiction [ECF No. 26] is **DENIED**.

Dated this ___22nd___ day of January, 2013.

E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE